The State of Missouri, Respondent, *v.* Chas. Davis,
Appellant.

### July 3, 1883.

In a prosecution for larceny from a dwelling house by entering at night and
ransacking rooms of the upper stories while the owners were below, it
is competent to show that the wagon into which the defendant jumped
to drive away, and in which he was immediately arrested, contained at
the time of the arrest a billy, a pistol, and an outsider.

Appeal from the St. Louis Criminal Court, Van
Wagoner, J.

*Affirmed.*

Thos. B. Harvey, for the appellant.

J. R. Harris, for the respondent.

Bakewell, J., delivered the opinion of the court.

Defendant was indicted for larceny from a dwelling
house. He was convicted of the offence, and sentenced to
two years' imprisonment in the penitentiary.

The testimony tended to show, that at the date named
in the indictment, whilst the family inhabiting No. 2104
Lafayette Avenue were at supper, about an hour after dark,
the servant girl, who had gone from the dining-room to get
the paper at the front door, saw a man coming down the
stairs from the second story with a bundle in his hand.
She gave the alarm and the gentleman of the house and his
son ran to the front door, where they saw clothing strewed
on the pavement and two men on the sidewalk about seven
hundred feet off, hurrying away. They gave chase. The
two men seen, after going about four hundred feet, jumped
into a wagon standing near the pavement. There was
another man in this wagon who drove hastily away, but
turned up Nicholson's Place, which is a *cul de sac.* The per-
sons in pursuit called an officer to their assistance. The

officer caught the horse and told those in the wagon to throw up their hands. Instead of doing so, they jumped to the ground. Defendant was identified by the police officer as the man driving. He and another occupant of the wagon ran off. The third man, whose dress and general appearance answered the description of the man seen by the servant girl, drew a pistol, and was shot by the policemen. The other two men were arrested by policeman who had been attracted by the pistol shooting. In the wagon, were found, under the seat, a pistol, a billy, and a pair of outsiders. The persons who had entered the house of the prosecuting witness had ransacked all the closets and bureaus of the first and second floors of the house, had moved a heavy trunk from one room to another, and carried off some clothing and trinkets.

Only one ground is urged for disturbing the conviction. It is, that the evidence as to these tools was improperly admitted. That evidence was given by the police officer. Objections to its competency and relevancy were properly saved. For the sake of brevity, we put the testimony in narrative form, using the language of the witness.

" I found, in the wagon, right under the seat, on the bottom of the wagon, one loaded revolver, a billy, and a jimmy or outsider, a burglar's tool. That is the pistol, that is the jimmy, or burglar's tool. It is used to catch a key from the outside and unlock it: that is, for pushing it through the key-hole and turning the key. The character of the instrument is for turning keys in doors, or drawers, or closets. It is used for that, either on the outside or inside of the house."

If there was no probable connection between the possession of these tools and the offence committed, then the introduction of this testimony would have been error. To this extent the cases cited by appellant in his brief clearly go. The possession of burglar's tools does not tend to connect the person having them with the commission of rape

or petty larceny. But the possession of tools which are equally adapted to the commission of burglary and the offence charged does not become unimportant merely because the tools, or some of them, are called burglar's tools, and the offence is not called burglary. It is obvious that men who set out to commit larceny by stealing from a dwelling house in the night-time, and who commit the offence by ransacking the closets and wardrobes of two stories of the dwelling whilst the family are at supper, are very probably provided with some implements which burglars use, weapons of offence and defence, such as a pistol and a billy, and instruments for turning keys, such as an outsider, which may be as necessary to commit larceny by opening an inner room as to commit burglary by opening the lock of an outside door. The implements, tools, and weapons were all of them apparently adapted to the commission of the particular offence shown, and just the implements which common sense would lead us to expect to find upon men going round in bands of three, after dark in an autumn evening, with a wagon to carry off their spoils, and with the intention of entering houses through the unfastened front door, whilst the family were at supper, and carrying off clothing and trinkets from the bed-rooms. Circumstantial evidence is proper on the hypothesis that certain things are usually concomitant of each other. The general rule undoubtedly is, as laid down in *The People* v. *Winters* (29 Cal. 658), cited by appellants, that before burglarious tools can be received in evidence, it must be shown that the burglary charged was in fact committed, that it was committed by the aid of burglarious tools like those proposed to be shown in evidence, and that the defendant was in the vicinity at the time, or about the time the offence was committed. This is on the ground that, unless a burglary has been committed, possession of tools to commit it can not be said to form links in a chain connecting defendant with the offence. But, where no burglary has been committed, but an offence has been committed for the commission of which certain

tools, also used by burglars, are appropriate, and which offence is not likely to be attempted in the manner detailed in the evidence by persons not having such tools about them at the time, and such tools, apt for the commission of the offence, are found upon persons in the vicinity under the circumstances of the present case, it would be impossible to say that the possession of such tools was not an important link in the chain of circumstantial evidence.

We think the judgment should be affirmed. It is so ordered. Judge THOMPSON does not sit. Judge LEWIS concurs.